# Gorgas's Appeal.

The provision of the Act of Congress of February 10th 1868, that taxation on national bank stock shall not be at a greater rate than is assessed upon other moneyed capital in the states, relates only to the rate, and does not prohibit the states from exempting any *subjects* from taxation. Per Graham, P. J.; adopted by the Supreme Court.

May — 1872.   Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Court of Common Pleas of *Cumberland county*: In Equity: Of May Term 1872, No. 89.

To January Term 1871 of the court below, William R. Gorgas filed a bill against George Wetzel, treasurer of Cumberland county, and Allen B. Floyd and others, commissioners of the same county.

The bill was originally filed also against the Town Council and School District of Mechanisburg; it set out:—

1, 2, 3. Plaintiff was a resident of Lower Allen township, Cumberland county; was a stockholder in the First National Bank of Mechanicsburg, owning fifty shares of its stock, the par value of which was $100 per share; the bank was located at Mechanicsburg.

4. The defendants were, respectively, treasurer and commissioners of the county of Cumberland.

5, 6. Referred to Act of Congress of February 10th 1868, and Act of Assembly of March 31st 1870.

7. The capital stock had been assessed at $140 per share.

8. Assuming to act under the authority of the Act of March 31st 1870, the defendants had levied a tax of five mills on the dollar on the assessed value of plaintiff's stock, and were proceeding to collect it; Wetzel had also issued his warrant for collecting a state tax of three mills on the dollar of its assessed value, and also five per cent. on the amount of the state tax for collecting it.

9. The rate of taxation was higher than other moneyed capital in the hands of individual citizens was taxed in the Commonwealth; the levy and collection of the taxes were illegal, against the Act of Congress, and oppressive.

[Gorgas's Appeal.]

The prayers were for an injunction against the collection of the taxes, &c., and for general relief.

Wetzel, the treasurer, answered that he had received from the county commissioners, on the 6th of June 1870, a duplicate for the three mills state tax, and the five mills county tax, on the bank stock held by the plaintiff; that he demanded the tax from the plaintiff; he having neglected to pay it for thirty days after the first of August 1870, Wetzel issued his warrant to the constable of Lower Allen township to collect the tax, directing the constable in the warrant to add five per cent. for collection.

The commissioners answered that upon the assessor's return of the assessed value of the stock and a list of stockholders, they assessed on the shares for the year 1870 a state tax of three mills and a county tax of five mills on the dollar, and delivered the duplicate to the county treasurer, on the 6th of June 1870. The state and county tax imposed upon the stock were at the same rate imposed for 1870 on other moneyed capital in the hands of individuals in the state.

They further averred that the plaintiff's remedy was not by this proceeding; but his remedy, if dissatisfied, was by appeal to the auditor-general within thirty days after notice of the assessment, and having allowed the time to elapse he was concluded.

The case was heard on bill and answer.

The court (Graham, P. J., delivering the opinion) disposed of the claim of the council and school district. He then said : * * *

" The only remaining question is the legality of the county tax levied and assessed by the county commissioners on the national bank stock of plaintiff.

"The Act of Congress of February 10th 1868 provides that the legislature of each state may determine and direct the manner and place of taxing all the shares of national banks located within said state, subject to the restriction that the taxation shall not be at a greater rate ' than is assessed upon any other moneyed capital in the hands of individual citizens of such state.'

" The Act of Assembly of April 22d 1846 makes it the duty of each assessor to require of every person, &c., * * * to deliver him a statement, &c., * * * showing the aggregate amount of money due and owing by solvent debtors to such person, &c., * * *. This includes every imaginable sort or kind of moneyed capital, and was taxable for county purposes until the Act of April 4th 1868. This act provides as follows : ' That all mortgages, &c., * * * shall be exempt from all taxation except for state purposes; and that from and after the first day of December next no taxes of any description shall be assessed or collected except for state purposes, on or from mortgages, judgments, recognisances, or moneys owing upon articles of agreement for the sale of real estate, whether made and executed before or after the passage of this act.' The plain-

tiff's counsel contend that by the provisions of this act there is moneyed capital exempt from all taxation except for state purposes, and consequently the Act of Congress which provides that the shares of national banks shall not be taxed by a state ' at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of such state,' exempts national bank shares from all taxation except for state purposes.     But I do not think this is the reasonable construction of the Act of Congress.     When the Act of Congress restricts the rate of taxation so that it shall not be at a greater rate than that upon any other moneyed capital in the hands of individual citizens of such state, the intention of Congress was to prevent the shares of national banks from being taxed at a greater rate than other moneyed capital was taxed by the general laws of the state taxing this kind of property.     It was not intended that if a state excepted some particular items of moneyed capital from taxation, leaving every other imaginable sort and kind subject to taxation under the general laws taxing moneyed capital, that the shares of national banks should come within the exception and not within the general rule.     If a state exempts the purchase-money payable on the sale of real estate from taxation, to avoid the injustice of double taxation, by taxing first the land in the name of the vendee and the unpaid purchase-money in the name of the vendor, leaving all other moneyed capital of its citizens subject to taxation, I cannot think that Congress intended that such exemption would preclude the state from taxing the shares of national banks in the hands of her citizens.     Suppose the same provision was made by Congress as to the taxation of the real estate of national banks, if it could be made constitutionally, could it be urged with the semblance of plausibility, that because the state exempted from taxation churches, cemeteries, colleges, academies, &c., therefore the state could not tax the real estate of national banks ?     This would be a case in every respect analogous to the present.     I am, therefore, of opinion that Congress did not intend that the shares of national banks should fall within particular exemptions from the general law, but be subject to its provisions as all other moneyed capital in the state, which is not excepted from the general provisions of the general tax laws.

"Another question is raised under the Act of our state legislature of 20th March 1870.     The 3d section of this act enacts, ' That all the shares of national banks, located within the state, and of banks and savings institutions incorporated by the state, shall be taxable for state purposes at the rate of three mills per annum upon the assessed value thereof, and for county, school, municipal and local purposes, at the same rate as now is or may hereafter be assessed and imposed upon other moneyed capital in the hands of other individual citizens of this state.'     The 4th section of the same act provides—' That in case any bank or savings institution

[Gorgas's Appeal.]

as aforesaid shall elect to collect annually from the stockholders thereof a tax of one per centum upon the par value of all the shares of said bank or savings institution, and pay the same into the state treasury, on or before the 20th day of January in every year, the said shares, capital and profit shall be exempt from all other taxation under the laws of this Commonwealth.'

"The third section of this act subjects the shares of national banks and other banks and savings institutions to a state tax of three mills on the assessed value of the shares, and for county, school, municipal and local purposes at the same rate as now is or may hereafter be assessed upon other moneyed capital in the hands of individual citizens of the state. This subjects the shares of all banks and savings institutions to a three mill state tax, and to county, school, borough or township taxes at the same rate assessed upon other moneyed capital of the citizens of the state. Under this section it cannot be questioned that national bank shares are subject to pay the same taxes that are imposed by the laws of the state on other moneyed capital, except the state tax which is limited to three mills, leaving the county, school and municipal taxes to the limits imposed by the laws of the state.·

"But the fourth section provides that if any bank or savings institution aforesaid shall elect to collect annually from the shareholders a tax of one per centum upon the par value of *all* the shares, and pay the same into the state treasury on or before the 20th day of January in every year, then the said shares, capital and profits shall be exempt from all other taxation under the laws of this Commonwealth. If the banks shall elect to pay one per centum on the par value of their capital into the state treasury then they shall be exempt from all other taxation.

"The defendants contend that this bank has not elected, and has not paid the one per centum tax into the state treasury during the year 1870 ; that the act requires it to be paid every year, and not having elected or paid a tax for 1870, the time of election and payment for that year has passed, and the shareholders are liable to pay county, school and municipal taxes for the year 1870. But when is the bank required to elect and pay into the state treasury ? The act says on the 20th day of January in every year. But the act was passed on the 31st of March 1870. Certainly the legislature could not have intended that the bank should elect to pay and pay to the state the one per centum tax more than two months before there was any law requiring·it to do so. This would be very absurd.

"I consider the plain meaning of the act is, that the bank shall elect and pay to the state the one per centum on the 20th of January every year next after the passage of the law. This can do no injustice to the state, and the bank cannot escape the tax of 1870. It must elect and pay the tax of 1870 on or before the 20th of

[Gorgas's Appeal.]

January 1871, and the per centum must be paid on the 20th of January every year thereafter, allowing twenty days of grace after the expiration of the year for which the tax is paid.

"The plaintiff contends that the assessment and levy of the tax was premature; that by payment of the one per centum into the state treasury on or before the 20th of January 1871, the county and other taxes would be avoided, and their collection illegal. I do not consider the levy of the taxes illegal, for our general tax laws prescribe a time when taxes shall be levied and assessed; but proceeding to collect the taxes as averred in the bill, and not denied in the answer, was illegal, for the plaintiff had until the 20th of January 1871 to elect to avoid their payment, and the proper authorities could have restrained their collection till that time.

"The opinion I have stated renders it proper that a * * * preliminary injunction issue to restrain the collection of the county tax. If the one per centum on the par value of the shares of said bank is paid into the state treasury on or before the 20th of January 1871, the preliminary injunction will be made perpetual; if it is not paid the preliminary injunction will be dissolved, and the bill dismissed so far as it relates to the collection of the county tax." * * *

October 25th 1871, the decree of the Court of Common Pleas was filed, to wit: "Now, to wit: 25th of October 1871, * * * it appearing that the First National Bank of Mechanicsburg did not, on or before the 20th day of January 1871, pay into the state treasury a tax of one per centum on the par value of all the shares of said bank for the year 1870, it is ordered, &c., that the injunction against the commissioners of Cumberland county and the treasurer of said county be dissolved, and the bill dismissed at the costs of the plaintiff."

The plaintiff appealed to the Supreme Court, and assigned the decree for error.

The only question raised on the appeal was:—

"Can the state impose upon the shares of national banks a higher tax than three mills on the dollar, without imposing the same increased tax on mortgages, judgments and other moneyed capital in the hands of individual citizens of this state?"

*S. Hepburn, Jr.,* for appellant.

*M. C. Herman,* for appellees.

Judgment was entered in the Supreme Court, July 3d, 1872,

PER CURIAM.—We think this case was properly decided in the court below, and we affirm the decree upon the opinion of the learned judge of the Common Pleas.